**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 16-71-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| CARLOS TRAMELL RUSSELL | MAGISTRATE JUDGE HORNSBY |

## <u>MEMORANDUM RULING</u>

Before the Court is a motion to vacate, set aside, or correct sentence, filed pursuant to 28 U.S.C. § 2255 by Petitioner Carlos Russell ("Russell"). Record Document 41. Russell contends that his Sixth Amendment right to effective assistance of counsel was violated in various ways pertaining to the entry of his guilty plea, as well as his trial counsel's alleged failure to file a motion to suppress. For the reasons enunciated below, Russell's § 2255 motion is **DENIED and DISMISSED WITH PREJUDICE.**[1]

At the issuance of this opinion, the Bureau of Prisons website reflects that Russell was released from custody on July 13, 2022. Because Russell is currently on supervised release, his release from custody does not render his § 2255 moot. <u>See</u> <u>United States v. Bejarano</u>, 751 F.3d 280, 285 n.4 (5th Cir. 2014) (explaining that if the defendant is released from prison, yet still subject to a term of supervised release, his § 2255 claims are not mooted by his release from custody).

---

[1] Because Russell's claims are contrary to law and plainly refuted by the record, no evidentiary hearing is required. <u>See</u> <u>United States v. Green</u>, 882 F.2d 999, 1008 (5th Cir. 1989).

1

## **Factual Background**

On March 23, 2016, a grand jury in the Western District of Louisiana returned a three count indictment charging Russell with possession of a firearm by a convicted felon (count one); possession with intent to distribute a mixture and substance containing a detectable amount of cocaine (count two); and possession of a firearm in furtherance of a drug trafficking crime (count three).  See Record Document 1.  These charges stemmed from an event on July 8, 2015, in which Shreveport police officers responded to a call from Lekisha Allen about domestic violence by an armed person.  Record Document 29, p. 4. Responding officers saw Russell running into a residence.  Id.  Allen told officers that Russell, who was the father of her children, had strangled her and pointed a gun at her and their six-year-old child.  Id.  The child gave officers a description of the gun.  Id. When officers approached the residence to speak with Russell, they heard sounds of furniture being moved inside.  Id.  Russell eventually opened the door and gave consent to search.  Id.

During the search, officers located an attic access point above a bedroom closet. Id.  In that access point, they found a Romarm pistol, model Micro Draco, 7.62x39mm, and a magazine containing twenty-nine rounds of ammunition.  Id.  In the same access point, officers discovered three clear bags of drugs.  Id.  One bag had 28.13 grams of cocaine; a second bag contained crack cocaine, which was divided into twenty-seven individual packages, weighing a total of 6.41 grams; and the third bag contained 17.43 grams of cocaine.  Id.  On a search incident to arrest, officers found $1,108 in small denominations on Russell.  Id.

On June 23, 2017, with the advice of appointed counsel, Assistant Federal Public Defender Betty Marak, and pursuant to a plea agreement, Russell pled guilty to Counts One and Three—possession of a firearm by a convicted felon and possession of a firearm in furtherance of a drug trafficking crime.  Record Documents 23 & 25.

The United States Probation Office prepared a Presentence Investigation Report in this case.  However, because Russell does not challenge the sentence imposed by the Court, this ruling will not address the PSR.  On September 13, 2016, the Court sentenced Russell to thirty-seven months' imprisonment for Count One and sixty months on Count Three, which was to be served consecutively to Count One.  Record Document 33. The Court imposed concurrent three-year terms of supervised release and a mandatory special assessment of $100.00 for each count, for a total of $200.  Id.

On October 11, 2016, Russell timely appealed his conviction and sentence.  Record Document 35.  Mrs. Marak filed an Anders brief and moved to withdraw, as there were no nonfrivolous issues presented for appeal.  On June 19, 2017, the Fifth Circuit agreed, dismissing the appeal and granting counsel's motion to withdraw.  Record Document 40.

On May 18, 2018, Russell timely filed the instant motion under 28 U.S.C. § 2255.[2] In this motion, he asserts that Mrs. Marak coerced him into pleading guilty to a defective plea agreement; that Mrs. Marak allowed the Court to violate 18 U.S.C. § 924(c); that he

---

[2] After the Fifth Circuit issued its opinion dismissing the appeal, Russell had ninety days to seek a petition for writ of certiorari with the Supreme Court.  See Sup. Ct. R. 13.  His one-year limitation to file his § 2255 began to run only "upon expiration of the time for seeking certiorari in the U.S. Supreme Court, even where . . . the appellant [did] not actually file[] such a petition."  United States v. Gamble, 208 F.3d 536, 536 (5th Cir. 2000).  Thus, the Court finds Russell's § 2255 petition was timely filed.

has been punished twice for the same offense, in violation of the double jeopardy clause; that Mrs. Marak failed to object to forfeiture of $1,108 in cash; and that Mrs. Marak failed to file a motion to suppress.

## Law and Analysis

**I.    28 U.S.C. § 2255.**

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court when: (1) the sentence "was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3) "the sentence was in excess of the maximum authorized by law[;]" or (4) the sentence "is otherwise subject to collateral attack."  United States v. Scruggs, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a).  "As the Supreme Court holds, '[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'" United States v. Cooper, 548 F. App'x 114, 115 (5th Cir. 2013) (internal quotations and citations omitted) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)).  Rather, after a defendant is convicted and exhausts the right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted."  United States v. Shaid, 937 F.2d 228, 231–32 (5th Cir. 1991) (internal marks omitted) (quoting United States v. Frady, 456 U.S. 152, 164 (1982)).

A.    Ineffective Assistance of Counsel.

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Young,

77 F. App'x 708, 709 (5th Cir. 2003) (citing United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992)).  Courts may consider claims of ineffective assistance of counsel brought for the first time in a § 2255 motion. See United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996). To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Failure to establish either prong of the Strickland test will result in a finding that counsel's performance was constitutionally effective. Id.; see also Tucker v. Johnson, 115 F.3d 276, 280 (5th Cir. 1997).   The petitioner bears the burden of proof on both components of the Strickland standard.  See Strickland, 466 U.S. at 687.

As to the first prong, in determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.   "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal marks omitted).  If a tactical decision is "conscious and informed . . . [, it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Crane v. Johnson, 178 F.3d 309, 314 (5th Cir. 1999). "Judicial scrutiny of counsel's performance must be highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.  Thus, this Court's review "strongly presum[es] that counsel has exercised

5

reasonable professional judgment." United States v. Payne, 99 F.3d 1273, 1282 (5th Cir. 1996) (quoting Lockhart v. McCotter, 782 F.2d 1275, 1279 (5th Cir. 1986)).

To establish the second prong of prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[3] Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. A defendant is not prejudiced if "the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).  Self-serving conclusory statements that the outcome would have been different "fall[ ] far short of satisfying Strickland's prejudice element." Sayre v. Anderson, 238 F.3d 631, 635 (5th Cir. 2001).  Moreover, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are

---

[3] The Strickland Court outlined the extent of prejudice that must be established by the defendant:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.
>
> . . .
>
> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> . . .
>
> When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

Strickland, 466 U.S. at 691-95.

6

insufficient to raise a constitutional issue." Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998).  The prejudice element requires more than a mere allegation; the defendant must affirmatively prove it.  United States v. Thompson, 44 F.3d 1004, *2 (5th Cir. 1995). Because both prongs of Strickland must be satisfied, a court may reject an ineffective assistance of counsel claim upon an insufficient showing of either deficient performance or prejudice, without inquiry into the remaining prong.  See Strickland, 466 U.S. at 689-94.

     B.    Guilty Pleas.

Where, as here, the defendant has been convicted pursuant to a guilty plea, the analysis is slightly different.  "Addressing the general question of the extent to which constitutional claims survive the entry of a guilty plea, the Supreme Court has repeatedly stated that a guilty plea effects a forfeiture of certain constitutional claims *if* the plea is entered knowingly and voluntarily and with competent assistance and advice by defense counsel."  United States v. Batamula, 788 F.3d 166, 176 (5th Cir. 2015) (abrogated on other grounds) (citing Mabry v. Johnson, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.")).  "Claims of ineffective assistance of counsel that affected the validity of the guilty plea are necessarily excluded from this general rule that constitutional defenses are forfeited by entry of a guilty plea." Id. (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he

7

is charged, . . . [h]e may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [deficient.]")).

Thus, the only claims that survive a guilty plea are those implicating the validity of the plea itself.  See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000).  Generally, "once a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived, and the waiver includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea."  United States v. Cavitt, 550 F.3d 430, 441 (5th Cir. 2008) (internal marks omitted).  "When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice."  United States v. Rivas-Lopez, 678 F.3d 353, 356-57 (5th Cir. 2012) (citing Teague v. Scott, 60 F.3d 1167, 1170 (5th Cir. 1995)).  "When considering challenges to guilty plea proceedings, [the Fifth Circuit has] focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."  United States v. Gracia, 983 F.2d 625, 627-28 (5th Cir. 1993); see also United States v. Gaitan, 954 F.2d 1005, 1011 (5th Cir. 1992) ("For a plea to be knowing and voluntary, the defendant must be advised of and understand the consequences of the guilty plea.") (internal marks omitted).

The Fifth Circuit has explained that as long as a defendant understands the length of imprisonment and the fine that might possibly be imposed at sentencing, then he is fully aware of the consequences of his guilty plea.  United States v. Young, 981 F.2d 180,

8

184 (5th Cir. 1992); <u>United States v. Rivera</u>, 898 F.2d 442, 447 (5th Cir. 1990).  The Supreme Court "has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor."  <u>United States v. Ruiz</u>, 536 U.S. 622, 630 (2002).

        1.     Advice to Plead Guilty.

With respect to plea advice, the Court must determine whether defense counsel was familiar with the relevant facts and law, such that his advice permitted the accused to make an informed and conscious choice to plead guilty.  <u>Cavitt</u>, 550 F.3d at 440–41.  As the Fifth Circuit has advised, defense counsel must

> actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts. The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimal level.

<u>Id.</u> at 440.

In <u>Hill v. Lockhart</u>, the Supreme Court instructed that <u>Strickland</u>'s prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." 474 U.S. 52, 59 (1985).  "When a defendant alleges that his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been

different' than the result of the plea bargain . . . .   Instead, we consider whether the defendant was prejudiced by the 'denial of the entire judicial proceeding . . . to which he had a right.' " Lee v. United States, 137 S. Ct. 1958, 1965 (2017) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000)).  Thus, when the defendant asserts he would not have pleaded guilty if counsel had advised him correctly, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. In short, "[W]hen the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error—for instance, where a defendant alleges that his lawyer should have but did not seek to suppress an improperly obtained confession," the "defendant must also show that he would have been better off going to trial." Id. at 1965.  But, when the attorney's error affects the defendant's understanding of the consequences of pleading guilty, the defendant is not required to prove that he would have been better off going to trial.   Id. at 1965-67.   He must present contemporaneous evidence to substantiate his claim that he would have insisted on going to trial had he been properly informed of the consequences of his guilty plea.

Thus, in the context of guilty pleas there is a distinction between claims related to the defendant's prospects of success on the underlying charges and claims related to the consequences flowing from the plea.  Id. at 1965.   Where the ineffective assistance claim "turns on [the defendant's] prospects of success" on the underlying charges and "those are affected by the attorney's error," the inquiry considers whether he would have been better off going to trial.  Id.  This involves predictions of the ultimate outcome at trial. Id.;

Premo v. Moore, 562 U.S. 115, 126–27, 132 (2011); Hill, 474 U.S. at 59.  A defendant who lacks a viable defense "fac[es] long odds" and "will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." Lee, 137 S. Ct. at 1966.  "Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." Id.  To the contrary, where the claim relates to the consequences of the plea, as was the case in Lee, the claim may not turn solely on the likelihood of the outcome at trial. Id.

## II.   The Instant Motion.

### A.   The Guilty Plea Hearing.

Here, Russell contends that Mrs. Marak provided ineffective assistance at the plea stage.  He claims he lacked an understanding of the plea and its consequences, that his plea was involuntary because he was coached on how to answer the Court's questions, and that he was not advised of the advantages and disadvantages of pleading guilty or going to trial.  The only support he cites for this claim is the following exchange from the guilty plea:

THE COURT:       Did you have knowledge of the gun being there?

THE DEFENDANT:  Yes, ma'am.

THE COURT:       Okay. Okay. And you knew where the gun was?

THE DEFENDANT:  Yes, ma'am.

THE COURT:       You're hesitating again, Mr. Russell.   Did you know where the gun was?

THE DEFENDANT:  Yes, ma'am.

Record Document 38, pp. 7-8.  Russell claims this discussion demonstrates that Mrs. Marak "coached" him and prevented him from answering on his own.  Record Document 41-1, p. 4.  Had Mrs. Marak not forced him to provide certain answers, Russell contends he would have informed the Court that he did not have any knowledge of the gun or the drugs in the attic and did not put them there.  Russell's representation of the discussion, however, is incomplete, as he failed to quote the entire conversation.  The record of the hearing, along with the written plea agreement, belies Russell's claim.

At the outset of the plea hearing, the Court explained to Russell that its job was to ensure his guilty plea was valid and that it could not accept an invalid plea.  Record Document 38, p. 3.  During the guilty plea colloquy, the Court explained the charges against Russell.  It is this dialogue that Russell quotes in his motion; the discussion was in regard to Count One and Russell's understanding of the charges against him.  The full transcript reveals the context of this exchange:

| | |
|---|---|
| THE COURT: | Okay. Now, with that said, did you have that gun in your possession? |
| MS. MARAK: | Your Honor, this is a constructive possession case. The gun was actually found in the ceiling of the apartment and that is part of the issue, but Mr. Russell now understands constructive possession. So I think the way you asked it causes him to pause, which is: It's in the house and he's in the house, so he has constructive possession of the weapon. |
| THE COURT: | All right. And whose house is it, Mr. Russell? |
| THE DEFENDANT: | A friend of mine. |
| THE COURT: | Were you staying there? |
| THE DEFENDANT: | No, ma'am. |

| | |
|---|---|
| THE COURT: | Were you in the house at the time? |
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | Did you have knowledge of the gun being there? |
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | Okay. Okay. And you knew where the gun was? |
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | You're hesitating again, Mr. Russell.   Did you know where the gun was? |
| THE DEFENDANT: | Yes, ma'am. |

Id. at pp. 7-8.

The Court later asked Russell, "How did the gun come to be in the attic of that house?"  Id. at p. 29. Russell answered, "I put it in there."  Id.  The Court notes that Russell failed to include that crucial admission in his § 2255 motion.  And again at another point in the colloquy, Russell agreed that he possessed the gun and the drugs:

| | |
|---|---|
| MS. MARAK: | But he doesn't deny knowing the gun was in the attic and the drugs were in the attic and they belonged to him. He does not deny those facts. |
| THE COURT: | Is that true, Mr. Russell, you do not deny those facts? |
| THE DEFENDANT: | Yes, ma'am. |

Id. at p. 27.

In ensuring Russell understood the charge against him in Count Three—the § 924(c) charge—, the Court explained how that charge related to the allegation in Count Two, the drug charge.  The Court clarified that Russell was not pleading guilty to the drug

charge in Count Two, but that the drugs and the gun were being used together to form

the basis for the charge in Count Three:

THE COURT: Okay. Count 2, you're not pleading guilty to. Count 3, you are pleading guilty to. And it says that in the same date, in furtherance of a drug trafficking crime which you may be prosecuted for in a court of the United States, that is, possession with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, as alleged in Count 2, you did have that same firearm.

So what this says is that you're not pleading guilty to possession with intent to distribute the cocaine, but what it says is that you were doing that while you had a gun in your possession. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you have any questions about Count 3?

THE DEFENDANT: No, ma'am.

. . .

THE COURT: Okay. So at this time, then, can you tell me in your own words what you believe that you are charged with?

THE DEFENDANT: Possession of a firearm by a convicted felon in a drug-- yeah, having a gun in relation to the drugs.

Id. at pp. 8-9. The discussion of Count Three continued later in the hearing, after the

factual basis was entered into the record:

THE COURT: -- and I appreciate you interrupting me because that was helpful. I think that's your hang-up. Do you understand the drug trafficking crime is possession with intent to distribute?

THE DEFENDANT: Yes, ma'am.

| | |
|---|---|
| THE COURT: | So in light of that and in light of the facts that you admit, which would support a guilty plea for possession with intent to distribute, do you believe, sir, that you are in fact guilty of a drug trafficking crime? |
| THE DEFENDANT: | Yes, ma'am. |

Id. at p. 31.

Throughout the guilty plea proceeding, the Court ensured that Russell's decision to plead guilty was not only made knowingly, but also voluntarily, as demonstrated by the following exchange:

| | |
|---|---|
| THE COURT: | All right. All right; the next area is whether or not you've been forced or coerced into this plea, sir.  Has anyone in the courtroom today threatened, forced, or coerced [you] to plead guilty to Count 1 and 3? |
| THE DEFENDANT: | No, ma'am. |
| THE COURT: | Has anyone not present in the courtroom today threatened, forced, or coerced you in any way to plead guilty to Counts 1 and 3 today? |
| THE DEFENDANT: | No, ma'am. |
| THE COURT: | Has anyone told you that if you do not plead guilty, that further charges not contained in the indictment will be brought against you? |
| THE DEFENDANT: | No, ma'am. |
| THE COURT: | All right. Now this is the question, Mr. Russell: Are you willing to plead guilty because you are in fact guilty as charged in Count 1 and 3? |
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | All right. I understand -- and is this a free and voluntary on your part, done with the advice and consent of your lawyer? |

15

> THE DEFENDANT:    Yes, ma'am.

Id. at pp. 38-39.  With respect to his communication and satisfaction with defense counsel, the following discussion took place:

> THE COURT:    Have you had enough time and opportunity to discuss your case with Ms. Marak or someone else from her office?
>
> THE DEFENDANT:    Yes, ma'am.
>
> THE COURT:    Are you satisfied with her representation of you?
>
> THE DEFENDANT:    Yes, ma'am.

Id. at p. 36.

At the conclusion of the hearing, the Court again reassured itself that Russell was entering a valid guilty plea.

> THE COURT:    All right. And so, Mr. Russell, you are pleading guilty in this matter because you are in fact guilty of these crimes; is that right?
>
> THE DEFENDANT:    Yes, ma'am.
>
> THE COURT:    And you are not pleading guilty simply to get this over with –
>
> THE DEFENDANT:    No, ma'am.
>
> THE COURT:    All right. -- because you're just fed up with the process and all of that? You're pleading guilty because the facts that the officer testified to, from the point that they came to the house, are in fact true?
>
> THE DEFENDANT:    Yes, ma'am.

Id. at pp. 32-33.

In addition to the discussion between the Court and Russell during the plea hearing, which confirms Russell understood the nature of the charges against him and the consequences of the plea, and that his plea was entered knowingly and voluntarily, the written plea agreement itself belies Russell's claims of coercion and lack of understanding. The plea agreement, signed by Russell, stated:

> I have read this plea agreement and had it read to me by my attorney.  I have discussed it with my attorney.  I fully understand the plea agreement and accept and agree to it without reservation.  I do this voluntarily and of my own free will.  No threats have been made to me, nor am I under the influence of anything that could impede my ability to fully understand this plea agreement.
>
> . . .
>
> I am satisfied with the legal services provided by my attorney in connection with this plea agreement and the matters related to this case.

Record Document 25, p. 6.

Further, Russell agreed that "my plea in this matter is free and voluntary and that it has been made without any threats or inducements (except the plea agreement) whatsoever from anyone associated with the State or United States Government or my attorney and that the only reason I am pleading guilty is that I am in fact guilty as charged."  Record Document 25-1, p. 2.  He also agreed in writing that he understood "[m]y right to plead guilty or not guilty."  Id.

Here, the record supports the determination that Russell's plea was knowing and voluntary. Russell's self-serving statements that he did not understand the plea and was coerced into pleading are contradicted by the plea agreement itself and the transcript of the guilty plea hearing, as set forth above.  In sum, the record establishes the following. At the time Russell entered his guilty plea, the Court advised him of the charges against

him and discussed the charges with him; while under oath, Russell stated that he had received the indictment and discussed it with his attorney; he stated that he understood the charges against him; he agreed to the factual basis that was used to substantiate the elements of the offenses; Russell stated that no one had threatened or coerced him into pleading guilty and that he was doing this of his own accord because he was, in fact, guilty as charged.    Moreover, Russell stated that he was satisfied with Mrs. Marak's representation of him in the criminal proceeding.   As the Fifth Circuit has explained, "[S]uch testimony in open court carries a strong presumption of verity." DeVille v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994).  To be sure, a defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath. United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998).  Indeed, "[o]ur willingness to accept plea agreements and colloquies as the factual bases for convictions demands a corollary respect for the integrity of their contents." United States v. Palmer, 456 F.3d 484, 491 (5th Cir. 2006).

During the hearing, the Court also advised Russell of his constitutional rights, and Russell stated he understood his rights.   He also agreed that he understood that, by pleading guilty, he was giving up those rights.   Russell stated he understood the minimum and maximum penalties for each Count and the consecutive nature of Count Three. Russell's "solemn declarations in open court carry a strong presumption of verity." United States v. McKnight, 570 F.3d 641, 649 (5th Cir. 2009).  The Court finds that Russell's guilty plea was both knowing and voluntary.

B.      Defective Plea Agreement.

Russell next claims that Mrs. Marak provided ineffective assistance of counsel by allowing him to plead guilty to a "defective" plea agreement.   Record Document 41-1, p. 5.   The rationale underlying this argument is Russell's mistaken legal interpretation of § 924(c).   He misunderstands the statute to require that he be convicted of the underlying drug trafficking offense; in other words, in this case, Russell believes that he could not be convicted of Count Three (the § 924(c) charge) without also being convicted of Count Two (the drug charge).   Thus, Russell argues that without a conviction on Count Two, his conviction on Count Three cannot stand; and as such, Mrs. Marak was ineffective in allowing him to plead guilty.

As the Fifth Circuit has explained, "[I]t is only the fact of the offense, and not a conviction, that is need[ed] to establish the required predicate." United States v. Branch, 91 F.3d 699, 733 (5th Cir. 1996) (citing United States v. Munoz-Fabela, 896 F.2d 908, 910–11 (5th Cir. 1990)); see also United States v. Ruiz, 986 F.2d 905, 911 (5th Cir. 1993) (holding that acquittal on predicate offense does not bar conviction under 18 U.S.C. § 924(c)).   Thus, it is of no moment that Russell was not convicted of the drug trafficking offense, as he need not be convicted of the predicate offense.   Accordingly, Mrs. Marak did not provide ineffective assistance in failing to raise this issue, as "[c]ounsel cannot be deficient for failing to press a frivolous point." Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (citing Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990)); see also United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984).

C.      Double Jeopardy.

Russell's next argument is that Mrs. Marak provided ineffective assistance of counsel when she allowed him to "enter a plea of guilty to [p]ossession of a firearm two times for the same firearm."  Record Document 41-1, p. 7.  In other words, Russell mistakenly believes the double jeopardy clause was violated because two of his convictions were based on possession of a single firearm.  He also believes the double jeopardy clause was violated because his § 924(c) conviction is invalid; however, as discussed above, that contention has already been rejected.

The Fifth Amendment to the United States Constitution provides that "No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.   As the Fifth Circuit has explained, this protection "prohibits the Government from charging a single offense in several counts and is intended to prevent multiple punishments for the same act."  United States v. Kimbrough, 69 F.3d 723, 729 (5th Cir. 1995).

To be sure, the double jeopardy clause protects against multiple punishments for the same offense where Congress has not otherwise authorized a cumulative punishment scheme.  United States v. Ogba, 526 F.3d 214, 232-33 (5th Cir. 2008).  Here, Russell's argument is premised on his belief that he is receiving multiple punishments for the same conduct, which is one type of multiplicity protected against by the double jeopardy clause. To ascertain whether a defendant's conduct can be charged in separate counts under separate statutes, courts apply the Blockburger test to determine whether either offense requires proof of a fact, i.e., an element, that the other does not.  Blockburger v. United

States, 284 U.S. 299 (1932).  When the elements are the same, the crimes charged are "the 'same offense' and double jeopardy bars additional punishment and successive prosecutions." Milner v. Johnson, 210 F.3d 368, 368 (5th Cir. 2000) (per curiam) (quoting United States v. Dixon, 509 U.S. 688, 696 (1993)).

In this case, to be convicted of possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1), the elements required that Russell (1) knowingly possessed the firearm and ammunition charged in Count One; (2) that at the time he possessed the firearm and ammunition, he had already been convicted of a felony offense; and (3) that the firearm and ammunition had traveled in interstate commerce.[4]  To be convicted of possession of a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c), the elements required that Russell: (1) had committed an underlying drug trafficking crime (here, the one set forth in Count Two) and (2) knowingly possessed a firearm and that possession was in furtherance of the drug trafficking offense. See Record Document 25-2, pp. 1-2.  Sections 922(g)(1) and 924(c) each contain an element that the other does not.  Section 922(g)(1) requires that Russell was already a convicted felon prior to his possession of the firearm and ammunition; and it also requires that the firearm and ammunition affected interstate commerce.  These elements are not required by § 924(c).  In contrast, § 924(c) requires that Russell possessed the firearm in furtherance of the underlying drug trafficking crime, which is not required by § 922(g)(1).

---

[4] This guilty plea was entered prior to the Supreme Court's opinion in Rehaif v. United States, 139 S. Ct. 2191 (2019), and thus the elements reflect the law prior to that opinion.

21

Therefore, under the Blockburger test, these are two distinct offenses.  As the Supreme Court has instructed, if each offense "requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." Iannelli v. United States, 420 U.S. 770, 786 n.17 (1975). Here, there was no multiplicity issue. Accordingly, Mrs. Marak did not provide deficient counsel by failing to raise a frivolous issue.

D.    Forfeiture.

Next, Russell contends Mrs. Marak was ineffective in failing to object to the forfeiture of $1,108.00 that was found on Russell the night of his arrest.  Russell argues that Mrs. Marak should have objected to the forfeiture of the money because it was being forfeited in connection with the drug offense alleged in Count Two; because he was not convicted of Count Two, the forfeiture was allegedly unlawful.   Russell neglects to mention, however, that he agreed to the forfeiture of the money:

| | |
|---|---|
| MR. GILLESPIE: | . . . I would ask that he agree to forfeit the cash and cocaine found with his case. |
| THE COURT: | Ms. Marak? |
| MS. MARAK: | Your Honor, I don't think [there is] any issue to the cocaine because that is in itself illegal for him to possess so I'm sure he doesn't want that back. |
| | I agree with the Court that the cash is not at issue and I would need to discuss that further with Mr. Russell. |
| THE COURT: | All right. Please take an opportunity. |
| | (Ms. Marak and the defendant confer.) |
| | ... |

22

> THE DEFENDANT:   Yes, Your Honor, I can forfeit the cash, too.
>
> THE COURT:   All right. So then the forfeiture, then, sir, would include cash. Do you understand that?
>
> THE DEFENDANT:   Yes, ma'am.

Record Document 38, p. 42.  This claim lacks merit, as Russell clearly agreed to the forfeiture of these assets, after discussing the matter with his attorney.  His attorney is not ineffective for allowing him to agree to the forfeiture.

Further, aside from the merits, the claim is not cognizable under § 2255.  The Fifth Circuit has instructed that § 2255 ineffective assistance claims must relate to the defendant's custodial status.  United States v. Segler, 37 F.3d 1131, 1137 (5th Cir. 1994).  In Segler, the court held that "[a] monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement for § 2255 purposes."  Id.  (quoting United States v. Michaud, 901 F.2d 5, 7 (1st Cir. 1990)).  Indeed, when a defendant challenges the forfeiture of assets, "which does not go to the validity of his conviction or sentence, his claim is not cognizable under § 2255."  United States v. Banguera, 62 F.3d 393, 1995 WL 449891, *1 (5th Cir. 1995).

E.   Motion to Suppress.

Russell's final argument is that Mrs. Marak was ineffective for failing to file a motion to suppress and by allowing him to plead guilty without having filed such a motion.  Russell claims that Mrs. Marak should have moved to suppress the search of the residence where he, the drugs, and the gun were found.  He argues, "The record clearly reflects that Mr. Russell did not live [in] or own the residence where the search found drugs and a firearm.  Mr. Russell could not give permission to [s]earch the residence because he does not have

23

standing.  Mr. Russell's friend did not give permission to law enforcement to search the residence."  Record Document 41-1, p. 10.  There are a number of problems with this claim.

First, as to the merits, Russell concedes he did not live in or own the residence and thus could not grant or deny permission to search.  Therefore, he had no standing to pursue a suppression motion for the house.  The homeowner is the one who could have pursued a Fourth Amendment claim against law enforcement for an unlawful search, but that claim cannot be vindicated by Russell.  "Fourth Amendment rights are personal rights which  . . . may not be vicariously asserted."  Rakas v. Illinois, 439 U.S. 128, 133-34 (1978).  Because Russell had no standing to contest the search of the residence, he was not prejudiced by Mrs. Marak's decision not to file a motion to suppress.

In addition, this claim is not cognizable in the instant motion.   As the Supreme Court stated in Tollett v. Henderson:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson, 397 U.S. 759, 770 (1970)].

Tollett, 411 U.S. at 267.  The principle that "a Fourth Amendment claim ordinarily may not be raised in a habeas corpus proceeding following a plea of guilty . . . rests on the fact that the claim is irrelevant to the constitutional validity of the conviction."  Haring v. Prosise, 462 U.S. 306, 321 (1983); see United States v. Cothran, 302 F.3d 279, 286 (5th

Cir. 2002) (a guilty plea forecloses claims "to searches and seizures that violate the Fourth Amendment.").  This claim is meritless.

## Conclusion

For the foregoing reasons, based on the record and the relevant jurisprudence, this Court finds that Russell has failed to establish that any deficiency in his counsel's performance prejudiced him under <u>Strickland</u>.  Therefore, Russell's § 2255 motion [Record Document 41] be and is hereby **DENIED** and **DISMISSED WITH PREJUDICE**.  Because Russell's claims are refuted by the record, no evidentiary hearing is required.

Pursuant to Rule 11(a) of the Rules governing § 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner.  Unless a Circuit Justice or a Circuit or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeal.  In this case, a certificate of appealability is **DENIED** because Russell has failed to demonstrate a substantial showing of the denial of a constitutional right.

**THUS DONE AND SIGNED** this 20th day of March, 2023.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE